**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| MACARENA MORENO, VIRGINIA M. | § | |
| SOLIS, and MILAGROS MORENO, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-639 |
| | § | |
| METLIFE LIFE AND ANNUITY | § | |
| COMPANY OF CONNECTICUT F/K/A | § | |
| THE TRAVELERS LIFE AND ANNUITY | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

<u>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION**</u>
<u>**FOR PARTIAL SUMMARY JUDGMENT**</u>

Plaintiffs Macarena Moreno, Virginia M. Solis, and Milagros Moreno bring this action against

Defendant MetLife Life and Annuity Company f/k/a The Travelers Life and Annuity Company for

alleged breaches of their annuity contracts.  Defendant claims that the statute of limitations bars some

of Plaintiffs' claims and thus filed a Motion for Partial Summary Judgment.  Plaintiffs filed a

Response, and Defendant filed a Reply.  Then, each Party filed Sur-replies.  For the reasons stated

below, Defendant's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED**

**IN PART**.[1]

**I.  Background**

In 1999, Plaintiffs each purchased an annuity contract from Defendant.  These contracts each

_____

[1]The Court does not consider this Order worthy of publication.  Accordingly, it has not
requested and does not authorize publication.

1

contained a provision that allowed the purchaser to withdraw money prior to the maturity date for the cash surrender value of the contract.  If the purchaser elected to fully surrender the contract, the entire cash value of the annuity was surrendered and the contract was cancelled.  If the purchaser elected to only partially surrender the contract and receive less than the cash value, the contract value was reduced accordingly.

Between 2000 and 2003, Defendant made various surrender payments that decreased the value of Plaintiffs' contracts.  Plaintiffs claim that many of the payments were made to Mariana Faure, who allegedly forged Plaintiffs' names.  Faure is the daughter of Plaintiff Virginia M. Solis and the sister of Plaintiffs Macarena Moreno and Milagros Moreno.

Plaintiffs were allegedly unaware that the withdrawals had been made until December 2004 or January 2005.  They informed Defendant about the alleged forgeries.  Defendant claims that Plaintiffs should have known about the payments earlier because it sent Plaintiffs regular account statements indicating that the payments were made.  Furthermore, Defendant asserts that even if Plaintiffs did not receive their mail, account information has been available on the internet since 2001.

Plaintiffs claim that after they reported the alleged forgeries to Defendant, Defendant requested that they file a criminal complaint, and they complied with that request.  Defendant then allegedly investigated the matter.  Plaintiffs' counsel mailed Defendant a letter regarding the matter on or about April 10, 2006.  On or about June 14, 2006, Plaintiffs received a letter from Defendant indicating that it was not accepting any liability for the surrenders allegedly made to Faure.[2]  On or about June 22, 2006, Plaintiffs' counsel sent a letter to Defendant stating that the refusal to pay was

---

[2]If Plaintiffs' allegations are correct, it is likely liability  rests with Faure, not Defendant. However, the Court is without sufficient information to make such a determination at this time.

considered an anticipatory breach of contract. Plaintiffs filed this lawsuit on August 7, 2006.

Defendant claims that the statute of limitations began to run each time it made a surrender payment. Plaintiffs claim that the statute of limitations did not begin to run until they accepted Defendant's alleged anticipatory breach.

## II. Legal Standard and Analysis

This is a diversity case, and Texas law applies. In Texas, a breach of contract claim must be brought within four years of the date of accrual. Tex. Civ. Prac. & Rem. Code § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) ("A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues."). "Normally a cause of action accrues when a wrongful act causes some legal injury." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). For breach of contract claims, the "claim accrues when the contract is breached." *Stine*, 80 S.W.3d at 592 (citing *Smith v. Fairbanks, Morse & Co.*, 101 Tex. 24, 102 S.W. 908, 909 (1907)); *see also Via Net*, 211 S.W.3d at 314 (quoting *Stine*). Thus, "even if the fact of injury is not discovered until later" or "all resulting damages have not yet occurred," the statute begins to accrue when the breach occurred. *S.V.*, 933 S.W.2d at 4.

The "discovery rule" delays the commencement of the limitations period "until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act or resulting injury." *Id.* (citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994)). A plaintiff asserting the discovery rule must show that the injury was "inherently undiscoverable" and "objectively verifiable." *See id.* at 7. An inherently undiscoverable injury need not be impossible to discover, but must be "by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456

3

(Tex. 1996)).

Here, Defendant claims that it sent regular statements to Plaintiffs and that account information was also available on the internet.  Plaintiffs have not alleged that Defendant failed to send them statements or inform them about viewing their accounts on the internet.  Thus, if Plaintiffs were reasonably diligent, they would have discovered that the payments in question had been made. Therefore, the discovery rule does not apply.

Defendants assert that, if Plaintiff is successful in showing that it paid sums from Plaintiffs' annuities to the wrong payee, individual breaches of contract occurred on the dates on which the payments were made and that, therefore, the statute of limitations for each individual breach began to run on those dates.  Conversely, Plaintiffs claim that an anticipatory breach occurred when Defendant advised them that it would not pay the sums originally promised when their annuities matured.  Under this theory, the letter Defendant sent to Plaintiffs stating that it would not restore their accounts to the allegedly correct amounts amounted to an anticipatory repudiation of the annuity contract, and Plaintiffs' response to Defendant's letter was an acceptance of the anticipatory breach. In this case, the statute of limitations would not begin to run until the anticipatory breach was accepted. *See, e.g.*, *Townewest Homeowners Ass'n v. Warner Commc'n, Inc.*, 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("An anticipatory breach of contract occurs prior to the time of performance and must be accepted or acted on by the other party." (citing *Kilgore v. Nw. Tex. Baptist Educ. Soc'y*, 90 Tex. 139, 37 S.W. 598 (1896))).

While Plaintiffs' argument is interesting, common sense dictates that Defendant's argument should prevail.  If Defendant successfully shows that its performance regarding the cash surrenders was consistent with the terms of the contract, then it did not breach the contracts, anticipatorily or

4

otherwise, when it informed Plaintiffs that their contract values were accordingly decreased.
Defendant's promise to pay a certain sum upon maturation was contingent on how much had
previously been disbursed.  The cash surrender provision of the contracts allows the annuity purchaser
to

> elect by Written Request to receive the Cash Surrender Value of this contract before
> the due date of the first Annuity of Income payment . . . . [The purchaser] may elect
> either a full or partial surrender of the Cash Surrender Value.  In the case of a full
> surrender, this contract will be cancelled.  *A partial surrender will result in a*
> *reduction in your Contract Value*. . . .

Def.'s Mot. for Partial Summ. J., Petroff Decl. Ex. F (emphasis added).  If, on the other hand,
Plaintiffs show that the payments were not in conformity with the terms of the contracts, then each
time a nonconforming payment was made, Defendant was in breach.  Plaintiffs cannot argue that
Defendant properly surrendered the cash but that it was a breach for Defendant to deduct the amount
of the cash surrenders from the contract value.  The contract inextricably links early payments to
reduction of the contract value, and Defendant was acting within the provisions of the contract if it
reduced the cash value on the basis of proper payments.  The reduction in ultimate payout is merely
a delayed symptom of the original breach.

If Defendant surrendered cash to a person other than the person to whom it promised to
surrender the cash, then it breached the contract each time it did so.  Thus, with each breach, the
statute of limitations began to run.  There is no reasonable argument that the payments were
inherently undiscoverable, and the Court does not find that equitable tolling of all the claims is
appropriate.  While it is conceivable that a reasonable individual may fail to look at his or her
statements for a month or two, failing to open one's mail or investigate why one is not receiving
statements for more than four years is incomprehensible.  The fact that three different individuals

5

ignored their significant financial interests for this length of time is baffling.

> A statute of limitations
>
> afford[s] plaintiffs what the legislature deems a reasonable time to present their claims and protect[s] defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, . . . fading memories, disappearance of documents or otherwise. The purpose of a statute of limitations is to establish a point of repose and to terminate stale claims.

*Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). Such statutes serve a valid purpose, and Plaintiffs have not presented the Court with any arguments that justify equitable tolling. However, Plaintiffs allegedly presented their claims to Defendant in December 2004 and January 2005. Defendant did not advise Plaintiffs it was not going to accept liability for the claims until June 2006, and Plaintiffs timely filed this action after they were so advised. Some of Plaintiffs' claims became barred by the statute of limitations while Defendants were investigating Plaintiffs' claims. The Court finds that disallowing these claims would not advance the legislative purposes of the statute of limitations and thus uses its equitable powers to toll the running of the statute of limitations during this timeframe. Therefore, rather than dismissing all claims that accrued four years before this claim was *filed*, the Court **DISMISSES** all claims regarding payments made by Defendant on or before December 1, 2000.[3]

---

[3] The Court chose the date of December 1, 2000 because Plaintiffs allege that they contacted Defendant about the forgeries "[d]uring December 2004 or January 2005." Pls.' Resp. at 4. Defendant claims that Plaintiffs reported the alleged forgeries on or about April 10, 2006. Def.'s Mot. at 1. The Court will entertain motions to dismiss the claims that accrued between December 1, 2000 and April 10, 2002 after the Parties have had a chance to develop the Record regarding the actual timing of notice to Defendant. Plaintiffs will need to present the Court with convincing evidence regarding who they spoke to and when in order for these claims to survive.

The Court strongly advises both Parties to compare the costs of discovery with the value of this case when considering settlement options. Virginia M. Solis claims that $41,700.00 was wrongfully paid to Faure from January, 2002 to April, 2003. Macarena Moreno claims that approximately $37,100 was wrongfully paid to Faure during the timeframe not barred by this

### III.  Conclusion

For the reasons stated above, Defendant's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' claims for funds allegedly dispersed by Defendant on or before December 1, 2000 are hereby **DISMISSED WITH PREJUDICE**. Each Party is to bear its own taxable costs, expenses, and attorneys' fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 21st day of May, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge

---

Order; the only surrender request paid after April 10, 2002 was for $2000.00.  Milagros Moreno claims that approximately $53,076.00 was wrongfully surrendered after December 1, 2000; her claims amount to only $10,200.00 if the claims accruing between December 1, 2000 and April 10, 2002 are ultimately barred.